UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOANN ABBO-BRADLEY, Individually and as Parent and Natural Guardian of DYLAN J. BRADLEY, TREVOR A. BRADLEY and CHASE Q. BRADLEY, Infants; ZACHARY and MELANIE HERR, Individually and as Parent and Natural Guardian of COLETON HERR and HEATHER HERR, Infants; NATHAN E. and ELENA KORSON, Individually and as Parent and Natural Guardian of LOGAN J. KORSON, an Infant, | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **NOTICE OF REMOVAL BY DEFENDANT** |
| CITY OF NIAGARA FALLS; NIAGARA FALLS WATER BOARD; GLENN SPRINGS HOLDINGS, INC.;  CONESTOGA-ROVERS & ASSOCIATES; CECOS INTERNATIONAL, INC.; EDWARD S. ROBERTS; GROSS PHC LLC; KANDEY COMPANY, INC.; MILLER SPRINGS REMEDIATION MANAGEMENT, INC.; OCCIDENTAL PETROLEUM CORPORATION (HOOKER), Individually and as Successor in Interest to Hooker Chemicals and Plastics Corporation; OXY, INC., f/k/a OCCIDENTAL CHEMICAL CORPORATION, Individually and as Successor in Interest to Hooker Chemicals and Plastics Corporation; OP-TECH ENVIRONMENTAL SERVICES; ROY'S PLUMBING, INC.; SCOTT LAWN YARD, INC.; and SEVENSON ENVIRONMENTAL SERVICES, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MILLER SPRINGS REMEDIATION MANAGEMENT, INC.**  Civil Action No. _____ |
| Defendants. | ) ) | |

PLEASE TAKE NOTICE that Defendant Miller Springs Remediation Management, Inc.

("MSRM") hereby gives notice of its removal of this action, pursuant to 28 U.S.C. §§ 1331,

1367, 1441 and 1446, from the Supreme Court of the State of New York, County of Niagara, to

the United States District Court for the Western District of New York.  As grounds for removal, MSRM states as follows:

## NATURE OF THE ACTION

1.      This is an action by three Plaintiff families who allege personal injuries and property damages as the result of alleged chemical contamination in the Love Canal neighborhood of Niagara Falls, County of Niagara, New York, which Plaintiffs attribute to the conduct of various Defendants, including MSRM.  (*See* Ex. A, Amended Complaint ("Am. Compl."), at ¶¶ 141-61.)  Plaintiffs seek compensatory and punitive damages, and equitable relief in the form of the "complete remediation of the contamination" (including an "abatement order" directing Defendants to remediate the contamination and monitor that remedy) and a study of health effects both to facilitate environmental abatement and remediation and to protect and preserve their health.  (*Id.* ¶¶ 6, 214-20.)  Liability for the cost of remediation of the Love Canal Site by the United States Environmental Protection Agency (" USEPA") and the New York State Department of Environmental Conservation (" NYSDEC") was the subject of extensive litigation in this Court (which began more than 30 years ago), pursuant to a federal statute (the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA")), and was resolved pursuant to several federal consent decrees with state and federal governmental parties that provide for (among other things) certain remedial work and the ongoing operation, maintenance, and monitoring of the remedy by Occidental Chemical Corporation ("OCC") at the Love Canal Site.  United States v. Hooker Chemicals & Plastics Corporation, No. 79-CV-990C.  Plaintiffs claim that they have neither previously asserted nor previously released any such claims.  (Am. Compl. ¶¶ 99-102.)

2.      Plaintiffs allege that MSRM and its affiliated entities (together, the "Occidental Defendants")[1] breached a duty of care with respect to (a) the initial disposal and release of hazardous substances at the Love Canal Site, which dates back to the 1940s; (b) the extensive remediation of the Love Canal Site that was implemented during the 1980s and 1990s; (c) the subsequent, ongoing operation, maintenance and monitoring of the Love Canal site; and (d) an alleged acute release of hazardous substances during a sewer repair project at a location near the Love Canal Site in January 2011.  (*Id.* ¶¶ 51, 77-103, 164-71, 172-81, 182-85, 186-89, 190-96, 197-205, 206-09, 210-13.)  Plaintiffs seek to hold all Defendants, including the Occidental Defendants, liable under several state-law causes of action.  (*See id.*)

3.      Plaintiffs' claims raise substantial federal questions because they present controversies arising under CERCLA.  Federal courts have "exclusive original jurisdiction over all controversies arising under [CERCLA], without regard to the citizenship of the parties or the amount in controversy." 42 U.S.C. § 9613(b).  Plaintiffs' claims present controversies arising under CERCLA because they challenge the sufficiency and effectiveness of the remediation of the Love Canal Site, which was implemented pursuant to CERCLA, by both USEPA and NYSDEC, and components of which were the subject of consent decrees between OCC and those two agencies and ordered by this Court.  (Am. Compl. at ¶¶ 184, 188, 208, 212, 219-20.)

4.      Indeed, contrary to Plaintiffs' allegations, just last month, in response to a request made by this Court, the United States Department of Justice submitted a letter that enclosed a report by the USEPA and NYSDEC regarding the Love Canal Site.  As stated by the United States Department of Justice, the report indicates that "the Love Canal containment remedy,

---

[1]      The Occidental Defendants include MSRM, Glenn Springs Holdings, Inc. ("GSH"), Occidental Petroleum Corporation ("OPC"), OXY Inc. ("OXY"), and OCC.  OXY Inc. is incorrectly referred to by Plaintiffs as having been formerly known as OCC.

which has been operating for more than 25 years, is functioning properly." The report stated

further that, "after a preliminary review of the last five years of data, USEPA sees no indication

that the monitoring wells over the last five years have revealed levels or trends different from the

previous . . . reports or the previous five-year review conclusions that the remedy is protective of

human health and the environment." *US v. Hooker* Docket (79-CV-990C), at No. 1530.

5.     Plaintiffs' claims also present controversies arising under CERCLA for additional

reasons: first, they allege that Defendants violated reporting requirements to the government

relating to the alleged release of hazardous substances. The duty to report to or notify the

government with respect to the release of contaminants arises under 42 U.S.C. § 9603(a) of

CERCLA. Second, they seek a medical monitoring trust fund, in part to facilitate the abatement

and remediation of the Love Canal Site. (Am. Compl. at ¶ 219.) As part of the remedy, the

federal Agency for Toxic Substances and Disease Registry ("ATSDR") and Centers for Disease

Control ("CDC") have worked with the New York State Department of Health, with funding

from a federal consent decree, on various studies of the health of those who resided around the

Love Canal Site.[2] Those studies evaluating the health of that aging population were

implemented as part of the remedy regarding the Love Canal Site under CERCLA, and

Plaintiffs' request for additional medical monitoring constitutes a challenge to the sufficiency of

that prior and ongoing health study and, therefore, to the CERCLA remedy.

6.     Plaintiffs' claims also are removable based on federal question jurisdiction

because they assert state law claims that "necessarily raise a stated federal issue, actually

disputed and substantial, which a federal forum may entertain without disturbing any

---

[2]      U.S. Dep't of Health and Human Services, Love Canal Follow-Up Health Study
(October 2008), http://www.health.ny.gov/environmental/investigations/love
canal/docs/report_public_comment_final.pdf (last reviewed May 6, 2013).

congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).  Specifically, Plaintiffs allege that Defendants have breached a duty to operate, maintain, and monitor the Site. (*E.g.*, Am. Compl. ¶ 140(b), ¶ 140(h).)  The essential element of duty underlying these claims arises from the two federal consent decrees that were entered by this Court in the previous Love Canal litigation.  In particular, pursuant to these 1994 and 1996 federal court consent decrees with New York State and the United States (the "1994 Federal Decree" and the "1996 Federal Decree" respectively (Exs. B and C, 1994 and 1996 Federal Decrees)), Occidental undertook the ongoing responsibility of operating, maintaining and monitoring the Love Canal Site.  *See US v. Hooker* Docket (79-CV-990C), at Nos. 1352 and 1361.

7.      Because Plaintiffs' claims relate to duties arising under the 1994 and 1996 Federal Decrees, these claims necessarily present an actually disputed, substantial question of federal law.  Moreover, given the substantial and significant amount of prior Love Canal litigation in this Court, hearing these claims in federal court will not disturb the balance of federal and state judicial responsibilities.  To the contrary, to allow these challenges -- to the sufficiency and effectiveness of the CERCLA Remedy and the monitoring obligations under the *Federal* Decrees -- to be decided by a state court, would more likely disturb the balance between the federal and state judiciaries.  Thus, these claims are removable under 28 U.S.C. § 1331 and *Grable*.

8.      Finally, all remaining claims are within the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

## FACTUAL BACKGROUND

9.      Since 1979, this Court has presided over extensive litigation concerning the Love Canal Site.  On December 29, 1979, the United States of America, on behalf EPA and the

Federal Emergency Management Agency ("FEMA"), commenced an action in this Court and filed amended complaints on June 18, 1980 and January 17, 1984, against OCC and affiliated companies seeking, *inter alia*, injunctive relief to remediate the Love Canal Site under several statutes, including the CERCLA, 42 U.S.C. § 9606; the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6973; the Rivers and Harbors Act of 1899, 33 U.S.C. § 407; and the Clean Water Act, 33 U.S.C. § 1364.  *US v. Hooker* Docket (79-CV-990C), at Nos. 1, 47, and 141.  The actions also sought reimbursement of response costs under Section 107 of CERCLA, 42 U.S.C. § 9607, Section 7003 of RCRA, 42 U.S.C. § 6973, and Section 504 of the Clean Water Act, 33 U.S.C. § 1364, arising out of the disposal by OCC of wastes from the production of chemicals, and the subsequent release of hazardous substances, at the Love Canal Site.  The actions sought similar injunctive relief and reimbursement of response costs based on the common law of nuisance, injunctive relief and civil penalties under Section 309 of the Clean Water Act, 33 U.S.C. § 1319, and injunctive relief under Section 1431 of the Safe Drinking Water Act, 42 U.S.C. 5 300(i).

10.     On April 28, 1980, the State of New York (on behalf of the DEC) and UDC-Love Canal, Inc. served OCC with a complaint in an action in the Supreme Court of the State of New York, Niagara County, asserting various common law claims of public and private nuisance and restitution and compensation for injury to the air, land and water resources of the State, and for punitive damages, arising from OCC disposal activities at the Love Canal Site.  This proceeding in state court was stayed, and the State was ordered to be joined in the federal action pending in this Court.  In the federal action, the State eventually asserted the same claims previously asserted in the State Supreme Court action, as well as claims under CERCLA, 42 U.S.C. § 9607,

for the recovery of response costs and further remediation at the Love Canal Site.  *U.S. v. Hooker*

Docket, at No. 68.

11.     Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Love

Canal Site on the National Priorities List ("NPL") by publication in the Federal Register.  *See*

47 Fed. Reg. 58476 (Dec. 30, 1982) (proposed rule), 48 Fed. Reg. 40658 (Sept. 8, 1983) (final

rule), 40 C.F.R. Part 300, Appendix B. The NPL is a list of the most significant hazardous waste

sites in the country that constitute national priorities for the EPA and that qualify for federal

Superfund financing to assure their remediation.

12.     Remediation of the Love Canal Site was designed and implemented by EPA and

DEC (except for certain limited work and subsequent operation, maintenance, and monitoring

activities by OCC) and pursuant to a regulatory process under CERCLA.  Numerous studies

were performed by these two agencies, followed by administrative decisions that selected the

various components of the remedy, and the performance of extensive work by the agencies

(through contractors directly engaged on their behalf).  *See* Ex. D (September 2008 EPA Five

Year Review, at Section II (Chronology) and Appendix C (References)).

13.     On September 19, 1989, this Court approved a Partial Consent Decree in the

*Hooker* lawsuit, and Modification No. 1 thereto, pursuant to which OCC undertook to implement

a limited portion of the remedy (the processing, transport and temporary storage of sewer and

creek sediments and other hazardous substances excavated from the area around Love Canal, in a

manner consistent with the national Oil and Hazardous Substances Pollution Contingency Plan,

42 U.S.C. § 9605, 40 C.F.R. Part 300).  (*See* Ex. E, 1989 Partial Consent Decree.)

14.     In 1994, this Court then entered a Consent Judgment between the State of New

York and OCC resolving the State's remaining claims against OCC and OCC's counterclaim

against the State.  (*See* Ex. B, 1994 Federal Decree.)  In Section 5 of that Consent Judgment, OCC and the State of New York agreed that OCC would become responsible for, and undertake, the future operation, maintenance and monitoring of the CERCLA remedy that EPA and DEC had selected and implemented at the Love Canal Site, as set forth in detail in Appendix B thereto.  (*See id.* at 7-10.)

15.     In 1996, this Court entered the 1996 Federal Decree resolving the United States' remaining claims against OCC.  (Ex. C 1996 Federal Decree.)  In that decree, OCC also agreed with the United States to perform the obligations imposed upon it under Section 5 of the 1994 Federal Decree with the State of New York.  Thus, OCC's obligations under the Consent Decree with the United States include, *inter alia*, the obligation to perform the CERCLA operation, maintenance, and monitoring activities described in the 1994 Federal Decree and Appendices thereto.  The 1996 Federal Decree provided that the United States may enforce OCC's obligation to perform the operation, maintenance, and monitoring activities under the 1994 Federal Decree, including any changed or additional obligations resulting from modification of that decree.  (*Id.* at 8-9.)

16.     Under the 1996 Federal Decree, OCC also agree to pay funds for use by the ATSDR and New York State Department of Health in completing the health studies of former residents from the area near the Love Canal Site.  *See* Love Canal Follow-Up Health Study (October 2008), at 5-6.

17.     On April 10, 2012, Plaintiffs filed their original complaint in the Supreme Court of the State of New York, Niagara County, in which GSH was the only one of the Occidental Defendants named.  On March 18, 2013, Plaintiffs filed their Amended Complaint, and added (for the first time) claims against the remaining Occidental Defendants.  (Ex. A, Am. Compl.)

GSH was served with the Amended Complaint by letter dated March 26, 2013.  MSRM, OXY
and OCC were served with the Amended Complaint on April 9, 2013 (although OCC was not
named as a defendant in the caption nor referred to in the allegations of the pleading).  OPC has
not yet been served.

18.     Following reports in the press about Plaintiffs' lawsuit -- which challenges the
CERCLA remedy reflected in the Federal Consent Decrees entered by this Court -- this Court
requested that New York State and the United States submit a report addressing the complaints
concerning the remedy at the Love Canal Site.  *See U.S. v. Hooker* Docket, at No. 1528.  As
discussed above, the report issued just last month indicates that "the Love Canal containment
remedy, which has been operating for more than 25 years, is functioning properly" and that
"EPA sees no indication that the monitoring wells over the last five years have revealed levels or
trends different from the previous . . . reports or the previous five-year review conclusions that
the remedy is protective of human health and the environment."

## GROUNDS FOR FEDERAL QUESTION JURISDICTION

**I.      Plaintiffs' Claims Challenge a CERCLA Remedy and thus Present Controversies
arising under CERCLA over which Federal Courts Have Exclusive Original
Jurisdiction.**

19.     "[D]istrict courts shall have original jurisdiction of all civil actions arising under
the Constitution, laws, or treaties of the United States."  28 U.SC. § 1331.

20.     Federal courts, pursuant to Section 113(b) of CERCLA, have "exclusive original
jurisdiction over all controversies arising under CERCLA."  42 U.S.C. § 9613(b).

21.     It is well-settled that a plaintiff cannot avoid federal question jurisdiction through
artful pleading.  The artful pleading doctrine is appropriately invoked to prevent "a plaintiff from
avoiding removal 'by framing in terms of state law a complaint the real nature of [which] is

federal, regardless of plaintiff's characterization, or by omitting to plead necessary federal questions in a complaint.'" *Marcus v. AT&T Corp*, 138 F.3d 46, 55 (2d Cir. 1998) (alteration in original) (quoting *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 27 (2d Cir. 1988)).

22.      Here, Plaintiffs seek injunctive relief that necessarily challenges the sufficiency and effectiveness of an approved CERCLA remedy that was designed and implemented by EPA and DEC, and has been operated, maintained, and monitored by OCC (by itself or through its affiliates, GSH and MSRM) pursuant to the 1994 and 1996 Consent Decrees.  (Ex. A, Am. Compl. at ¶¶ 6, 184, 188, 208, 212, 219-20; Exs. B and C, 1994 and 1996 Federal Decrees.) Specifically, Plaintiffs' claims for nuisance and trespass seek relief in the form of "the issuance of an abatement order," including with respect to the original contamination and releases of hazardous substances that formed the basis of the Federal Consent Decrees.  (Am. Compl. at ¶¶ 184, 188, 208, 212.)  Such relief would necessarily alter the specific duties and terms set forth in the 1994 and 1996 Consent Decrees, as well as the nature and extent of the remedy that was selected in the administrative decision documents and implemented by USEPA and NYSDEC, prior to those consent decrees.  In effect, Plaintiffs' request for injunctive relief in the form of further remediation challenges the sufficiency and effectiveness of the CERCLA remedy that is defined in those administrative decision documents and ordered (in part) in those Consent Decrees.  *See* Exhibit D, at Section II (Chronology) and Appendix C (References).

23.      A challenge to a CERCLA remedy presents a controversy arising under CERCLA.  Because this Court has exclusive jurisdiction to review controversies arising under CERCLA, Plaintiffs' claims are properly removed to a federal forum pursuant to 28 U.S.C. §§ 1331 and 1441.

II.   **Plaintiffs' Claim that Defendants Failed To Report to or Notify the Government Presents a Controversy arising under CERCLA over which Federal Courts Have Exclusive Original Jurisdiction.**

24.     Plaintiffs allege that the Occidental Defendants, among other Defendants, "failed to adequately report the presence of the release of hazardous contaminants to the appropriate governmental agencies and/or authorities." (Ex. A, Am. Compl. at ¶ 129.)  Plaintiffs claim that the violation for failing to report the release of hazardous contaminants is ongoing.  Plaintiffs also allege that exposure to contaminants and the foregoing reporting violation "continues to this day and is likely to continue into the future unless this Court issues an order of abatement." (*E.g.*, Ex. A, Am. Compl. at ¶ 208, 212.)

25.     Section 103(a) of CERCLA requires that "[a]ny person in charge of a vessel or an offshore or an onshore facility shall," upon "knowledge of any release of a  hazardous substance," notify the government.  42 U.S.C.  § 9603(a).

26.     Because the duty to report to or notify governmental authorities of releases of hazardous substances arises under CERCLA § 103(a), Plaintiffs' claim presents a controversy arising under CERCLA and is properly removed to a federal forum pursuant to 28 U.S.C. §§ 1331 and 1441.

III.   **Plaintiffs' Claim for a Medical Monitoring Trust also Presents a Controversy arising under CERCLA over which the Federal Courts Have Exclusive Original Jurisdiction.**

27.     Part of the remedy implemented by the state and federal governments at the Love Canal Site under CERCLA included a number of health studies under a program administered by NYSDOH and ATSDR that followed the health of former Love Canal area residents and is ongoing.  Plaintiffs, however, seek an additional study of health effects, beyond what the state and federal governments have implemented, which they contend will facilitate abatement and

remediation.  *E.g.*, Ex A., Am. Compl., at ¶ 217-220.  That claim, therefore, challenges the sufficiency of the health evaluation portion of the CERCLA remedy at the Love Canal site.

28.      As noted above, a challenge to a CERCLA remedy presents a controversy arising under CERCLA.  Because this Court has exclusive jurisdiction to review controversies arising under CERCLA, Plaintiffs' claim for injunctive relief providing for medical monitoring is properly removed to a federal forum pursuant to 28 U.S.C. §§ 1331 and 1441.

**IV.    Plaintiffs' Claims Depend on Duties arising under the Federal Consent Decrees, which also Establish a Substantial Federal Question.**

29.      Although the existence of federal jurisdiction for actions "arising under" federal law normally depends upon whether the plaintiff has pleaded a federal cause of action, the Supreme Court has explained that "[t]here is, however, another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues."  *Grable*, 545 U.S. at 312.

30.      A state-law claim is removable under federal question jurisdiction if it satisfies three elements: (a) it "necessarily raise[s] a stated federal issue" on the face of the complaint; (b) the federal issue is "actually disputed and substantial"; and (c) the claim can be adjudicated in federal court "without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id.* at 314.

31.      A state-law claim necessarily implicates a significant federal issue when it "appears from the complaint that the right to relief depends upon the construction or application of federal law."  *Grable*, 545 U.S. at 313.

32.      Plaintiffs allege breaches of duties that arise under federal consent decrees.  For example, Plaintiffs allege that the Occidental Defendants breached a duty of care in connection

12

with operation, maintenance, and monitoring of the Love Canal Site, claiming that, "[a]t all

relevant times, Defendant OCCIDENTAL/HOOKER[3] failed to monitor the actual effects of the

chemicals that it had wrongfully dumped at Love Canal on the surrounding neighborhood."

(Am. Compl. ¶ 140(b); *see also id.* ¶ 140(h) ("Defendant OCCIDENTAL/HOOKER failed to

continuously monitor and warn the neighborhood residents of the dangers posed by the materials

it had dumped on the Love Canal Site."); *id.* ¶ 125 ("Defendants should have discharged their

duties to adequately remediate and/or contain such materials . . . . "); *id.* ¶ 136 (alleging "the

failure of Defendants to appropriately remediate and contain Love Canal toxins"); *id.* ¶ 169

(alleging a "[f]ailure to properly remediate the Love Canal site during and after the original

remediation, and continuing to the present day," a "[f]ailure to properly monitor the chemicals in

the Love Canal containment area," and a "[f]ailure to properly and/or routinely test for

chemicals . . . to determine whether hazardous chemicals were present . . . ."); *id.* ¶ 178 (alleging

that "the manner in which the Defendants attempted to remediate and maintain and/or monitor

the Love Canal Site in this populated area is and was inappropriate").

33.     Under New York law, in determining whether a defendant has a duty relating to

property, "the threshold issue of ownership and control of the subject property . . . must be

established in order for liability to attach . . . ."  *See*, *e.g.*, *Wali v. City of New York*, 22 Misc. 3d

478, 866 N.Y.S.2d 528, 533 (Sup. Ct. Kings Co. 2008).

34.     Occidental's CERCLA operation, maintenance, and monitoring duties with

respect to the remedy implemented at the Love Canal Site cannot arise from its ownership of the

Site, however, because it does not own the Site.  Rather, to the extent any such duties exist, those

---

[3]     "Occidental/Hooker" is defined by Plaintiffs in their Amended Complaint to include OPC and Oxy (and Oxy, in turn, is defined (incorrectly) to include OCC).

duties must arise from and be contained in the 1994 and 1996 Federal Decrees.  (*See* Ex. B, 1994

Federal Decree at 7,11; Ex. C, 1996 Federal Decree, at 8-9.)  Thus, Plaintiffs' operation,

maintenance, and monitoring claims depend upon the construction of the judicially-noticeable

(and judicially-approved) 1994 and 1996 Federal Decrees, which, as federal consent decrees

necessarily implicate issues of federal law.  *See*, *e.g.*, *U.S. v. City of Loveland*, 621 F.3d 465, 471

(6th Cir. 2010) (observing that federal court "retains jurisdiction to police its consent decrees");

*Marcus*, 138 F.3d at 56 (recognizing a substantial federal issue when, even though plaintiffs did

"not expressly identify the source" of the duty underlying their claims, "the only possible

source" was federal law).

35.     Because establishing a duty supporting Plaintiffs' operation, maintenance, and

monitoring claims against the Occidental Defendants necessarily depends on the 1994 and 1996

Federal Decrees, which were entered under CERCLA and are subject to judicial notice by this

Court, a significant federal issue is necessarily implicated and this element of the *Grable* test is

satisfied.

36.     The "disputed" element of *Grable* also is satisfied because the federal issue raised

by Plaintiffs' operation, maintenance, and monitoring claim is disputed.  *Grable*, 545 U.S. at

314.  Just as Plaintiffs allege that the Occidental Defendants breached a duty of care, arising

under federal consent decrees, in their operation, maintenance, and monitoring of the CERCLA

remedy that was implemented at the Love Canal Site, so too do the Occidental Defendants deny

that they have breached any such duty.

37.     Jurisdiction also is proper under *Grable* because it would not disturb "any

congressionally approved balance of federal and state judicial responsibilities" for this action to

be heard in federal court. *Grable*, 545 U.S. at 314 ("[t]here must always be an assessment of any

disruptive portent in exercising federal jurisdiction.").  Exercising federal jurisdiction over this action would not disrupt any balance between the federal and state courts because environmental cases involving the remediation of contamination releases are frequently litigated in federal court under federal statutes such as CERCLA, Clean Water Act, and Clean Air Act causes of action, or pursuant to diversity jurisdiction, 28 U.S.C. § 1332(a), or the Class Action Fairness Act of 2005, *id.* § 1332(d).  Indeed, this Court presided over the complex, multi-party Love Canal litigation for several decades, and continues to express an interest in the matter today (by virtue of its February request for reports from the State and the United States).  Under these circumstances, any allegations of failure to discharge duties under this Court's consent decrees are properly adjudicated by this Court.

38.    Therefore, Plaintiffs' operation, maintenance, and monitoring claims implicate a substantial and disputed federal question, and this Court has federal question jurisdiction over them.  Accordingly, such claims are properly removed to a federal forum pursuant to 28 U.S.C. §§ 1331 and 1441.

## SUPPLEMENTAL JURISDICTION OVER OTHER CLAIMS

39.    This Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  As set forth above, Plaintiffs' operation, maintenance, and monitoring claims, request for an abatement order, request for medical monitoring, and claim that a duty to report to the government was breached all are within the Court's original jurisdiction pursuant to 28 U.S.C. § 1331.  Any other claims in this action arise out of the same case or controversy in that they seek relief in connection with personal injuries and property damages allegedly arising from the

same contamination from the Love Canal Site as is the subject of the CERCLA Remedy challenge, the negligent monitoring, and failure to report claims, and the request for medical monitoring set forth above.

40.     Accordingly, there is supplemental jurisdiction over all other claims in this action.

**PROCEDURAL REQUIREMENTS FOR REMOVAL**

41.     Removal is timely because MSRM was served by service on the New York Secretary of State on April 9, 2013.  28 U.S.C. § 1446(b)(1).

42.     All Defendants whom MSRM has determined have been purportedly joined and served have consented to or are joining in the removal of this action.  Evidence of consents and/or joinder for each purported Defendant are attached as Exhibit F.  *Id.* § 1446(b)(2)(A).

43.     Removal to this Court is proper because this is the district and division embracing the Court where the action was pending.

44.     An index of all documents filed and/or served is attached as Exhibit G, with all such documents contained on an accompanying disk in chronological order in accordance with the index.

45.     The undersigned certifies that a copy of this notice of removal (and all exhibits and attachments) is being provided to all other parties, and that notice of this removal is being filed with the clerk of the New York Supreme Court, Niagara County.

46.     No previous application for removal has been made in this lawsuit.

47.     MSRM hereby reserves its right to amend this notice of removal.

WHEREFORE, MSRM respectfully removes this action from the Supreme Court of New York, in the County of Niagara, bearing Index Number 146816, to this Court.

Dated: May 8, 2013                                    Respectfully submitted,


                                                      PHILLIPS LYTLE LLP


                                                      By /s/Kevin M. Hogan_____
                                                             Kevin M. Hogan
                                                      Attorneys for MSRM
                                                      3400 HSBC Center
                                                      Buffalo, NY  14203
                                                      Telephone:  (716) 847-8400
                                                      khogan@phillipslyte.com

Doc #01-2663656.4

17