UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOANN ABBO-BRADLEY, et al.,

                Plaintiffs,

v.                                                                          13-CV-487-JTC

CITY OF NIAGARA FALLS, et al.,

                Defendants.

---

APPEARANCES:           PHILLIPS & PAOLICELLI, LLP (STEVEN J. PHILLIPS, ESQ., of Counsel), New York, New York, Attorneys for Plaintiffs.

                                 PHILLIPS LYTLE LLP (KEVIN M. HOGAN, ESQ.), Buffalo New York, Attorneys for Defendant Glenn Springs Holdings, Inc.

This action was commenced in New York State Supreme Court, Niagara County, on April 10, 2012, by three families who own homes and reside in the vicinity of the Love Canal Landfill (the "Landfill") in the City of Niagara Falls, New York, seeking damages and equitable relief based on personal injuries and property damage caused by alleged releases of toxic chemicals and hazardous waste deposited at the site. *See* Item 1-1 (First Amended Complaint).  The case was removed to this court upon entry of a Notice of Removal on May 8, 2013, filed by defendant Miller Springs Remediation Management, Inc. ("MSRM") and consented to by all defendants, on the basis of original federal jurisdiction under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq*.  Item 1 (Notice of Removal).  Plaintiffs have moved

to remand the case to state court (Item 61), and the court has set a briefing schedule for consideration of the remand motion (Item 62).

Meanwhile, on June 4, 2013, defendant Glenn Springs Holdings, Inc. ("GSH") filed a motion pursuant to Fed. R. Civ. P. Rule 65 for preliminary injunctive relief, seeking to maintain the status quo of discovery pending the determination of the remand motion by enjoining plaintiffs and their attorneys from conducting environmental sampling in the area of the Landfill without providing: (1) written notice at least 96 hours prior to any such environmental sampling; (2) contemporaneous access to such environmental sampling; and (3) an opportunity to take split samples of all such environmental samples.  Item 46. The motion was accompanied by a request for expedited hearing, which the court granted by order entered June 5, 2013 (Item 53), setting a schedule for briefing and oral argument. Plaintiffs filed a lengthy opposing brief (Item 88), and counsel for defendants Conestoga-Rovers & Associates, Inc. ("CRA"), Sevenson Environmental Services, Inc. ("Sevenson"), Gross PHC, LLC ("Gross"), and NFWB have filed declarations or affidavits in support of the relief requested by GSH.  Items 100, 103, 105, 111.[1]  Oral argument was heard on July 10, 2013, and the court entered an order temporarily restraining any further environmental sampling activity in the area of the Landfill pending a ruling on the application for injunctive relief.  Item 115.

The court has now had the opportunity to fully consider and rule upon the issues raised by the application, and for the reasons that follow, grants GSH's motion for injunctive relief.

---

[1] Plaintiffs' motion (Item 110) to strike these supporting declarations and affidavits was denied by the court in its previous order.  Item 115.

## BACKGROUND

GSH is a wholly owned subsidiary of the Occidental Petroleum Corporation (or "OXY"). Since July 1, 1998, GSH has managed the operation, maintenance and monitoring ("OMM") of the remedial systems at the Love Canal site in coordination with its contractor, CRA, and under oversight of the New York State Department of Environmental Conservation ("NYSDEC"). *See* Item 1-4 (USEPA Five-Year Review Report, Sept. 2008), pp. 18-20.

The original complaint in this action was brought against GSH and CRA, along with the City of Niagara Falls ("City") and the Niagara Falls Water Board ("NFWB"),[2] alleging personal injuries and property damage resulting from a "sudden and accidental" discharge of hazardous chemicals, including " 'signature' contaminants that can be directly linked to the Love Canal Superfund Site," during an excavation of underground sanitary sewer pipe in the area of the Colvin Boulevard and 96th Street on January 11, 2011. *See* Item 3-5, ¶ 13. The 15-page complaint set forth causes of action based on common law negligence, abnormally dangerous activity, nuisance, and trespass.

On March 26, 2013, upon retention of new counsel, plaintiffs filed a 45-page First Amended Complaint which added several additional defendants and causes of action, significantly expanding the scope of the action to encompass claims relating to the design, implementation, operation and maintenance of the remediation and containment system

---

[2]The complaint also named the County of Niagara as a defendant, but the County was subsequently dismissed from the action by stipulated order entered August 14, 2012. Item 4-4.

at the Love Canal Landfill.  *See* Item 1-1.  Defendants then removed the case to federal

court, and motion practice has flourished.[3]

Shortly before removal, on February 1, 2013, plaintiffs filed a motion in state court

for an Order to Show Cause With Temporary Restraining Order seeking an order directing

the City and NFWB to:

a.      preserve and maintain adequate and representative samples of any
        and all material removed from the ground, streets, sewers and
        neighborhood, in the Love Canal Area … whether such materials are
        obtained as a result of excavation, scientific testing, construction,
        maintenance, remediation, repair, and/or for any other reason;

b.      provide plaintiffs with notice of any prospective work in the Love Canal
        Area and/or relating to the Love Canal Site no fewer than 96 hours in
        advance of such work …;

c.      permit plaintiffs' experts and/or representatives to be on-site for such
        prospective work relating to (a) and allow such experts and/or
        representatives to take samples of any such physical evidence in
        quantities sufficient for inspection and testing before such evidence
        is in any way modified, destroyed, degraded, moved, removed,
        transported, or disposed ….

Item 46-4, p. 4.

In support of their motion in state court, plaintiffs' counsel, Steven J. Phillips, Esq.,

submitted an affirmation stating that, unless their request for injunctive relief was granted,

plaintiffs would suffer irreparable harm by being "stripped of the ability to identify and

---

[3]In addition to the present motion, plaintiffs' remand motion, and motion to strike, several
defendants have moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a
claim upon which relief can be granted.  *See* Item 67 (GSH, MSRM, Oxy, Inc.); Item 71 (City); Item 78
(Op-Tech Environmental Services); Item 82 (Sevenson Environmental Services, Inc.); Item 85 (Kandey
Company, Inc.); Item 102 (Gross PHC, LLC); Item 104 (Roy's Plumbing, Inc.); Item 106 (Scott Lawn Yard,
Inc.).  These motions have also been scheduled for briefing, and will be taken up by the court (if
necessary) upon determination of the remand motion.

determine independently the materials to which they have been exposed ...."  Item 46-4,

p. 14, ¶ 26.

> Indeed, the very act of dislodging, removing, and/or transporting materials containing toxins can alter the chemical composition of such materials. Subsequent testing following disruption and a period of time would, therefore, yield inaccurate results as to the composition of the materials (if the materials could be tested at all after the passage of time).
> …
> This motion is made by Order to Show Cause because time is of the essence in preserving materials that may be removed from the Love Canal site and the surrounding neighborhoods.  As demonstrated by the annexed affidavit of [environmental consultant] Frank Beodray, the chemical … composition of such materials changes rapidly over time, necessitating advance notice of any such activity and the opportunity to take a contemporaneous sample for scientific testing.

*Id.* at p. 16-18,  ¶¶ 34, 39.  Counsel further affirmed that:

> Plaintiffs, of course, have the right to sample and test the chemical composition of any material present within the boundaries of their own property.  And Plaintiffs have begun to do so.  Such preliminary testing of Plaintiffs' homes has revealed the presence of a host of toxins – well in access of allowable regional screening guideline limits – known to be associated with the Love Canal dumpsite.

*Id.* at ¶ 27.

Plaintiffs, the City, and the NFWB eventually agreed upon the language for a Restraining Order, which was signed by New York State Supreme Court (Acting) Justice Matthew J. Murphy on March 8, 2013.  Item 46-5.  Pursuant to this order (made effective for 18 months), the City and NFWB are required to provide plaintiffs' attorneys with prior written notice of "any regularly scheduled prospective excavation, scientific testing, construction, maintenance, remediation, repair, and/or work performed for any other reason in the Love Canal Area and/or relating to the Love Canal site …," as well as

contemporaneous access and an opportunity to take environmental samples.  *See id.* at pp. 2-7.

On April 30, 2013, upon receiving information that plaintiffs had a "geoprobe drill" in the Love Canal neighborhood to conduct their own environmental sampling, counsel for GSH e-mailed plaintiffs' counsel requesting preservation of any evidence collected, along with "notice of sampling, and contemporaneous access to each sampling site for the purpose of obtaining a split sample."   Item 46-6, p. 2.  Counsel also proposed that the parties make an effort to "agree upon a mutually acceptable protocol to apply to any future sampling in the Love Canal neighborhood."  *Id.*   Plaintiffs' counsel replied that he was unable to accommodate these requests, based upon his view that "[p]laintiffs are not obligated under the applicable rules to permit defendants to participate in our investigation …."  *Id.*

As a result, GSH went back to state court for an Order to Show Cause With Temporary Restraining Order, signed by Judge Murphy on May 2, 2013 and made returnable May 6, 2013, requiring plaintiffs to provide split samples of all previously-obtained environmental samples, and restraining plaintiffs from conducting further environmental sampling without providing GSH with prior notice, contemporaneous access, and the opportunity to take split samples.  *See* Item 46-7.  E-mail communications dated May 3, 2013 indicate that plaintiffs and GSH reached an agreement to adjourn the return date to a mutually agreeable later date in order to accommodate "more substantial briefing than the present timing would allow …," Item 46-8, p. 2, and that plaintiffs agreed not to engage in any new environmental sampling until after May 27, 2013, or until after the court decided the matters raised by the order to show cause, whichever came first.  *See id.*

Then, on May 8, 2013 – before the state court could rule on those matters – the case was removed to this court, and GSH now seeks the same relief here by way of the present motion for a preliminary injunction under Fed. R. Civ. P. 65.

GSH contends that, given the nature of plaintiffs' claims in this action, any sampling of soil, groundwater, air, or other environmental conditions in the area of the Love Canal – whether taken from plaintiffs' private property, the Landfill itself, or other locations within the neighborhood – is evidence in the case that is potentially relevant and subject to discovery by all parties under the Federal Rules.  According to GSH, and as acknowledged by plaintiffs in their application for substantially similar injunctive relief in state court, given the uncontrolled and potentially changing environmental conditions at the properties throughout the neighborhood; the rapidly changing nature of the samples after they are extracted; and the variability of sampling techniques that can affect the reliability of any analytical test results, a protocol for contemporaneous access and opportunity to take split samples is necessary to prevent prejudice to other parties and the public interest.

Plaintiffs oppose GSH's request for prior notice of sampling activity, contemporaneous access, and opportunity to obtain split samples, maintaining that:

(1)    this court lacks jurisdiction to issue the injunctive relief sought;

(2)    GSH's application seeks to invade the work product, attorney-client, mental impression, and other recognized privileges and protections; and

(3)    GSH has not demonstrated entitlement to the injunctive relief sought.

*See* Item 88.

**DISCUSSION**

**1.     Jurisdiction**

Plaintiffs contend as a threshold matter that, as demonstrated by the materials submitted in connection with their motion for remand, this court lacks subject matter jurisdiction over the claims asserted in this action, and therefore, lacks jurisdiction to grant the relief sought by GSH.  However, those same jurisdictional issues have been raised by the motion for remand, and will be considered by the court in full upon completion of the current briefing schedule (and if deemed necessary, further argument).  Pending the court's determination of the remand motion, discovery in the case has been suspended, and GSH has requested provisional injunctive relief to maintain the discovery status quo in order to afford the parties equal access to, and to avoid spoliation of, any discoverable evidence that might be produced as a result of plaintiffs' sampling activity.

It is well settled that, in such circumstances, this court "has the authority to determine its own jurisdiction in a matter before it, and to maintain the status quo, as by issuance of a temporary restraining order, pending the determination of the issue." *United States v. Thompson*, 319 F.2d 665, 667 (2d Cir. 1963) (citing *United States v. United Mine Workers of America*, 330 U.S. 258, 290 (1947) ("In these circumstances, the District Court unquestionably ha[s] the power to issue a restraining order for the purpose of preserving existing conditions pending a decision upon its own jurisdiction.").  Maintaining the status quo is precisely what GSH seeks to accomplish by the present application.

**2.      Work Product/Attorney-Client Privilege**

Plaintiffs' primary objection to defendants' proposal for establishing a protocol for notice, contemporaneous access, and opportunity for the parties to take split samples is based on the assertion of the work product doctrine, which protects from pretrial disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). As recognized by the Second Circuit, there are two types of work product subject to this qualified protection: "opinion" work product, relating to the mental impressions of counsel, *see United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998), and "fact" work product, relating to factual investigations and technical analyses. *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) ("[F]act work product may encompass factual material, including the result of a factual investigation."), *cert. denied*, 553 U.S. 1094 (2008). The Second Circuit has noted further that:

> While it may well be that work product is more deeply concerned with the revelation of an attorney's opinions and strategies, and that the burden of showing substantial need to overcome the privilege may be greater as to opinions and strategies than as to facts, we see no reason why work product cannot encompass facts as well. It is helpful to remember that the work product privilege applies to preparation not only by lawyers but also by other types of party representatives including, for example, investigators seeking factual information.

*In re Grand Jury Subpoena Dated October 22, 2001*, 282 F.3d 156, 161 (2d Cir. 2002); *see also Feacher v. Intercontinental Hotels Group*, 2007 WL 3104329, at *4 (N.D.N.Y. Oct. 22, 2007) (work product doctrine "does not stop at protecting mere litigation strategy, but instead goes further to insure that, by affording protection to the results of investigations

into litigated claims, the adversary system upon which our civil judicial system is predicated the interests of justice will best be served").

It is also widely recognized that, while the work product doctrine may in some circumstances protect from pretrial disclosure the results of a factual investigation undertaken by a party or its consultant in anticipation of litigation, the doctrine "does not protect facts concerning the creation of work product, or facts contained within work product."  6 MOORE'S FEDERAL PRACTICE, § 26.70[2][a], p. 26-435 (citations omitted); *see Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 230 (E.D.N.Y. 2007) ("Work product protection typically applies only to 'documents and tangible things,' and not to facts within the documents."); *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 48 (N.D.N.Y. 1997) ("limited protection" for factual information, which "serves to prevent exploitation of the efforts of another party in preparing for litigation," does not extend to the facts themselves).

In this case, plaintiffs characterize the information sought to be protected as the mental impressions of counsel and their environmental consultants regarding internal strategy discussions about where, when, and whether to engage in soil and groundwater sampling.   According to plaintiffs, providing defendants with advance notice, contemporaneous access to sampling sites, and split samples of the materials collected would not only unfairly prejudice plaintiffs' trial preparation efforts by affording defendants a "free look" into plaintiffs' overall litigation strategy for prosecution of this action, but would also result in "coercive and chilling restraints" on other anticipated, but as yet unfiled,

actions on behalf of other area residents claiming harm as the result of releases of toxic substances from the Landfill.[4]  Item 88-1 (Phillips Affirmation), ¶ 13.

Upon consideration of the matters set forth in the submissions on file, and after hearing oral argument, the court takes a somewhat different view of the underlying motivation for GSH's present application.  GSH does not seek discovery of the mental impressions of counsel or their consultants, or the results of any factual investigations or technical analyses prepared for the purposes of this litigation.  GSH seeks discovery of facts, in the unique form of the constituent contaminant levels in the chemical composition of soil, water (surface and ground), and air samples taken from the environment in the area of the Landfill, likely to be relied upon as evidence in support of the claims and defenses in the case.

Nor does the application seek to prevent concerned residents who may be contemplating legal action from sampling the environmental conditions on their own properties.  Rather, the application seeks only to establish a protocol for prior notice, contemporaneous access, and opportunity for split sampling in order to ensure that all parties (or potential parties) have fair and equal access to any materials that might be obtained from the sampling activity, and later relied on as evidence in the case.  This makes good sense, given the general agreement among the parties regarding the volatile nature of subsurface conditions in the City of Niagara Falls (and, more particularly, the Love Canal area); the impact of weather and other environmental conditions at the time

---

[4]According to plaintiffs' counsel Steven J. Phillips, "several hundred other individuals" have retained the services of his law firm "to advise them whether or not to commence suit on their behalf …." Item 88-1, ¶ 2.

of sampling; the limited time frame for effective testing of contaminant levels in the samples; and other spoliation concerns.

Indeed, plaintiffs voiced these same concerns, and relied upon the very same rationale now urged by GSH, in obtaining the March 8, 2013 Restraining Order in state court requiring the City and NFWB to provide plaintiffs with advance notice, contemporaneous access, and opportunity for split sampling related to street and sewer work in the area of the Landfill. As recognized by plaintiffs' counsel in his affirmation submitted in support of the state court application, "time is of the essence" in preserving any materials obtained as a result of those activities because "the chemical … composition of such materials changes rapidly over time, necessitating advance notice of any [sampling] activity and the opportunity to take a contemporaneous sample for scientific testing." Item 46-4, p. 18, ¶ 39.

Plaintiffs contend that this rationale arose in the non-litigation context of remedial excavation work being performed by local government entities, as distinguished from the context of drilling and sampling by plaintiffs' own retained consultants on private property (including the property of non-parties contemplating suit) motivated by the litigation efforts of counsel. However, this court's reading of Judge Murphy's March 8, 2013 order clearly indicates that the notice, access, and sampling protocol established therein pertains to "any regularly scheduled prospective excavation, scientific testing, construction, maintenance, remediation, repair, and/or work performed for any other reason in the Love Canal Area and/or relating to the Love Canal site" by the City or the NFWB (Item 46-5, pp. 3-4), suggesting a much broader scope than the limited reading now urged by plaintiffs. Viewed in this light, plaintiffs' argument in opposition to GSH's request for adoption of the same

notice, access, and split sampling protocol for preservation of evidence obtained as the result of plaintiffs' own environmental sampling activities cannot logically be reconciled with the arguments made in support of their state court application.

Moreover, as discussed above, the work product doctrine does not immunize litigants or their consultants from disclosing the underlying facts obtained during the course of their investigations.   Under these principles, the facts relating to the chemical composition of the materials obtained as the result of environmental sampling in the neighborhood surrounding the Love Canal Landfill site, as well as the location, manner, and timing of the sampling activity, are discoverable, potentially relevant, and not protected from disclosure by the work product doctrine.

"In addition, when a party takes a position in a case that places at issue the very information sought to be protected from disclosure by the work product doctrine, the protection may be waived." *Occidental Chemical Corp. v. OHM Remediation Services Corp.*, 175 F.R.D. 431, 435 (W.D.N.Y. 1997), *quoted in Coastline Terminals of Connecticut, Inc. v. U.S. Steel Corp.*, 221 F.R.D. 14, 17 (D.Conn. 2003) (when property owner brought CERCLA response cost action against former owner, it placed at issue factual information contained in environmental consultant's reports with respect to site conditions, data and remediation efforts).  In this case, there can be no question that when they brought this action for damages and equitable relief stemming from the discharge of hazardous materials into the environment as a result of defendants' alleged negligent operation, maintenance and monitoring of the remedial systems at the Love Canal Landfill, plaintiffs placed at issue the chemical composition of the soil, water, groundwater, air, and other environmental conditions present in the surrounding neighborhoods – the very

information they now seek to protect from disclosure under the shield of the work product doctrine.

Accordingly, plaintiffs have not established on this record that granting the injunctive relief sought by GSH would result in the discovery of documents or tangible things prepared by plaintiffs' counsel or their consultants in anticipation of litigation.

Finally, although not vigorously pursued in the briefing and argument of the present application, plaintiffs have (somewhat obliquely) asserted the attorney-client privilege as a further ground for their objection to the notice, site access, and split sampling protocol sought by GSH.  This ground must also be rejected, for several reasons.

First of all, the party claiming the privilege bears the burden of demonstrating that there was: "(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential and (3) made for the purpose of obtaining or providing legal advice." *United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996).  None of these elements have been established on the present record.

More to the point, as discussed above with respect to the work product doctrine, even if providing defendants the opportunity for split sampling could somehow be construed as an intrusion on confidential communications between plaintiffs' counsel and their clients, the factual and scientific evidence collected through observation of the physical condition of the property in the area of the Landfill "can never be protected by the attorney-client privilege and neither can the resulting opinions and recommendations" of the environmental consultants, scientists, or engineers employed to gather the data, "since the information collected will generally be factual, obtained from sources other than the client." *United States Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156,

162 (E.D.N.Y. 1994), *cited in Occidental Chemical v. OHM Remediation*, 175 F.R.D. at 437.

For these reasons, the court finds that the relief sought by GSH in the present application is not barred by the work product doctrine or the attorney-client privilege.

### 3.    Preliminary Injunction

"A party seeking injunctive relief ordinarily must show (a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Belile v. Doe No. 1*, 2012 WL 3562032, at *1 (W.D.N.Y. Aug. 16, 2012), *quoting Tom Doherty Assoc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33 (2d Cir. 1995).  With regard to irreparable harm, the court agrees with GSH that allowing plaintiffs to continue their drilling and sampling activities without an established protocol for equal or equivalent access could result in spoliation of essential and relevant evidence, given the volatile and dynamic environmental conditions in the Love Canal Landfill area, the uncontrolled locations from where the samples were taken, the rapidly changing nature of the samples after they are extracted, and the variability of sampling techniques that can affect the resulting reliability of any analytical test results.  This is sufficient to establish irreparable harm in the absence of the injunctive relief sought, not just to GSH's asserted interest in equal access to potentially relevant and essential evidence, but also to the parties' common interest in fair resolution of the serious public health concerns raised by the allegations in the First Amended Complaint.

Further, the court's review and consideration of the parties' arguments with respect to the relief requested on this application, as well as counsel's forceful advocacy of their respective positions as demonstrated both in the written submissions and at oral argument, reveals sufficiently serious questions going to the merits of the application to make them a fair ground for litigation.  Plaintiffs have not convinced the court that they will suffer any prejudice or significant inconvenience as a result of the requirement that they give defendants prior notice, allow contemporaneous access to sampling locations, and provide the opportunity to obtain split samples, since they will maintain control over all aspects of their environmental sampling activities.  To paraphrase plaintiffs' counsel's argument in state court:

> All that [GSH] seek[s] in this application is the ability to take contemporaneous samples of materials, <u>before</u> such materials are disturbed, to ensure that they are preserved and appropriately analyzed.
> …
> The presence of [GSH's] representatives and/or experts will impose no undue burden or expense upon [plaintiffs].  Indeed, the sampling requested would simply require [GSH's] representatives to be present for a short period of time to take appropriate samples of materials.

Item 46-4, ¶¶ 15, 37.

Accordingly, the court finds that a balance of hardships tips decidedly in defendants' favor, and considerations of fairness and equity require granting GSH's application for an order maintaining the status quo with respect to the parties' fair and equal access to environmental sampling evidence until such time as the subject matter jurisdiction of the court is determined on the pending motion for remand.

**CONCLUSION**

For all the foregoing reasons, the application of GSH (Item 46) (joined by defendants CRA, Sevenson, Gross, and NFWB) is granted.  Plaintiffs and their attorneys are hereby enjoined, until further notice or order from this court, from conducting environmental sampling in the neighborhood surrounding the Love Canal Landfill site without providing GSH  (and all other parties and relevant governmental agencies):

(1)    written notice at least 96 hours prior to any such environmental sampling;

(2)    contemporaneous access to such environmental sampling; and

(3)    an opportunity to take split samples of all such environmental samples.

So ordered.

\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:   July 18, 2013
p:\pending\2013\13-487.jul18.2013