UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOANN ABBO-BRADLEY, et al.,

Plaintiffs,

-vs-                                                    13-CV-487-JTC

CITY OF NIAGARA FALLS, et al.,

Defendants.

In this action, three families who own homes and reside in the vicinity of the Love Canal Landfill (the "Landfill") in the City of Niagara Falls, New York, have sued several municipal and corporate entities for damages and equitable relief based on personal injury and property damage allegedly caused by releases of toxic chemicals from the Landfill. *See* Item 1-1 (First Amended Complaint). The case was originally filed in New York State Supreme Court, Niagara County, on April 10, 2012, and was removed to this court on May 8, 2013, pursuant to 28 U.S.C. §§ 1331 and 1441, upon entry of a Notice of Removal consented to by all defendants, on the basis of original federal jurisdiction under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.* Item 1. Plaintiffs then moved pursuant to 28 U.S.C. § 1447(c) to remand the case to state court for lack of subject matter jurisdiction, and for an award of attorneys' fees incurred as a result of improper removal. Item 61.

For the reasons that follow, plaintiffs' motion for remand is granted. The request for attorneys' fees is denied.

**BACKGROUND**

The original complaint in this action was brought against the City of Niagara Falls ("City"), the Niagara Falls Water Board ("NFWB"), Glenn Springs Holdings, Inc. ("GSH"), and Conestoga-Rovers & Associates, Inc. ("CRA"),[1] seeking damages and equitable relief based upon an alleged "sudden and accidental" discharge of hazardous chemicals, including " 'signature' contaminants that can be directly linked to the Love Canal Superfund Site," during an excavation of underground sanitary sewer pipe in the area of Colvin Boulevard and 96th Street on January 11, 2011. *See* Item 3-5, ¶ 13. The complaint, consisting of 15 pages containing 52 numbered paragraphs, set forth six causes of action based on common law negligence, abnormally dangerous activity, nuisance, and trespass, seeking "compensatory and punitive damages for personal injuries, lost quality of life, economic losses, and property value diminution, as well as equitable relief to remediate the contamination of their properties and establish a medical monitoring trust fund on their behalf …." *Id.* at ¶ 1.

On March 26, 2013, upon retention of new counsel, plaintiffs were granted leave by the state court to file a First Amended Complaint, consisting of 45 pages and 237 numbered paragraphs. *See* Item 1-1. As a result, the scope of the litigation was significantly expanded to encompass ten causes of action setting forth claims against the Occidental Chemical Corporation ("OCC"), Miller Springs Remediation Management, Inc.

---

[1]The County of Niagara was also named as a defendant in the original complaint, but the County was subsequently dismissed from the state court action by stipulated order entered August 14, 2012. *See* Item 4-4.

("MSRM"), GSH (referred to collectively as the "Occidental Defendants"),[2] CRA,[3] the City, Sevenson Environmental Services, Inc. ("Sevenson"), and CECOS International, Inc. ("CECOS") for negligent design, implementation, operation, and maintenance of the remediation and containment system at the Landfill (*see id.* at ¶¶ 77-113); claims against the NFWB, Op-Tech Environmental Services, Inc. ("Op-Tech"), Scott Lawn Yard, Inc. ("Scott Lawn"), Roy's Plumbing, Inc. ("Roy's Plumbing"), Gross PHC, Inc. ("Gross"), and Kandey Company, Inc. ("Kandey"), for negligent performance of the "Sewer Remediation Program" which allegedly caused the January 11, 2011 discharge of hazardous substances that was the focus of the original complaint (*see id.* at ¶¶ 114-133); and reiterating the demand for compensatory damages, punitive damages, and "equitable relief in the form of complete remediation of the contamination within, around, and under [plaintiffs'] properties …." *Id.* at ¶ 6.

Defendants then removed the case to this court on the ground that the claims as pleaded present controversies arising under CERCLA, over which federal courts have "exclusive original jurisdiction." 42 U.S.C. § 9613(b). According to defendants, by demanding equitable relief in the form of an "abatement order" as a remedy for nuisance and trespass (*see* Item 1-1, ¶¶ 184, 188, 208, 212), plaintiffs have directly challenged the sufficiency and effectiveness of the remediation at the Landfill that was implemented–and continues to be operated, maintained and monitored–pursuant to a series of Consent

---

[2]The Occidental Petroleum Corporation, and OXY Inc. were also named as defendants in the First Amended Complaint, but these entities were subsequently dismissed from this action by stipulated orders entered June 20, 2013. *See* Items 90, 91.

[3]Edward S. Roberts, CRA's President and Chairman, was also named as a defendant, but has subsequently been dismissed from the case pursuant to a Notice of Voluntary dismissal entered on June 27, 2013. *See* Item 101.

Decrees/Judgments entered between OCC, the United States Environmental Protection Agency ("USEPA") and the New York State Department of Environmental Conservation ("NYSDEC"), approved by this court as a component of the prior litigation in *U.S. v. Hooker Chemicals & Plastics Corp.*, No. 79-CV-990C.

The history of the *Hooker* litigation is well known, and will not be recounted in great detail here. Suffice it to say for present purposes that the *Hooker* case was brought in this court in December 1979 by the United States (on behalf of USEPA), joined later by the State of New York (on behalf of NYSDEC), against Hooker Chemicals & Plastics Corp. (corporate predecessor to OCC) and other defendants under several federal statutes, seeking injunctive relief and reimbursement of cleanup costs relating to the remediation of the Landfill, which had been utilized by Hooker for several years as a disposal site for toxic chemical wastes. In 1953, Hooker covered the Landfill with soil and deeded it to the City of Niagara Falls Board of Education, and the City soon built an elementary school on the property. In the years following, the surrounding area was extensively developed and populated, and problems with odors and residues in basements and backyards became commonplace, prompting investigations of the soils and groundwater in the area. In August 1978, both the state and federal governments issued health emergency declarations, and in 1980 the federal government issued a further emergency declaration, eventually resulting in the evacuation and relocation of approximately 950 families. *See generally U.S. v. Hooker Chemicals & Plastics Corp.*, 850 F. Supp. 993 (W.D.N.Y. 1994); *U.S. v. Hooker Chemicals & Plastics Corp.*, 680 F. Supp. 546 (W.D.N.Y. 1988); *see also*

Item 116-5 (Hogan Aff., Exh. D (September 2008 USEPA Five-Year Review Report, Love Canal Superfund Site)).

Remediation of the Landfill was begun by NYSDEC in 1978, and–following the enactment of CERCLA in 1980– was conducted jointly by USEPA and NYSDEC pursuant to a cooperative agreement entered in 1982.[4]  The components of the remedy, selected by means of a series of administrative determinations and regulatory decisions, consisted primarily of a 40-acre, high-density polyethylene cap covered by 18 inches of clean soil and seeded for grass; a deep drain tile perimeter trench for leachate collection; a leachate pump and treatment system; soil and sediment excavation from various properties, creeks, and sewers surrounding the landfill; land use restrictions imposed on certain other areas; provisions for ongoing operation, maintenance, and monitoring ("OM&M") of the remedial components; and long-term studies of the environmental conditions in the surrounding neighborhoods and the health of current and former residents.  *See* Item 116-1 (Hogan Aff.), ¶ 14.  These remedial components were implemented in several stages over the course of many years, pursuant to the Consent Decrees/Judgments approved by this court and entered on the record in the *Hooker* litigation.  *See* Items 1-2 (1996 Consent Decree); 1-3 (1994 Consent Judgment); 1-5 (1989 Partial Consent Decree); *see also* 69 Fed. Reg. 12609-11.

On February 23, 1988, this court found OCC jointly and severally liable under section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for the costs incurred by the state and

---

[4]In 1983, the site was placed on the National Priorities List ("NPL"), established pursuant to CERCLA's implementing regulations as a list of "priority releases for long-term remedial evaluation and response" to be utilized by the USEPA for prioritization of Superfund-financed remedial actions.  40 C.F.R. § 300.425.

federal governments in responding to the emergency.  *See* 680 F. Supp. at 556-59.  In March 1994, following a lengthy trial, the court found that OCC could not be held liable for an award of punitive damages under the laws in force at the time of the conduct alleged.  *See* 850 F. Supp. at 1069.  The remaining claims and cross-claims for response costs were eventually resolved by settlement,[5] and the case was closed upon entry of final judgment in May 1998.  *See* Case No. 79-CV-990, Items 1520-24.

In September 1999, USEPA issued a Preliminary Close-Out Report, followed by a Final Close-Out Report in March 2004, reflecting its determination that the remedy at the Love Canal Landfill Site was complete and was protective of human health and the environment, as required by CERCLA.  *See* Item 116-5 (Five-Year Report); 69 Fed. Reg. 12609.  Later in 2004, USEPA removed the Site from the NPL, based on its determination that no further remedial actions were required, the remedy was protective of human health and the environment, and the OM&M[6] would continue to confirm that the remedy was protective of human health and the environment.  69 Fed. Reg. 58322-23; Item 116-7.

Meanwhile, in 1988, NYSDOH issued a "Love Canal Emergency Declaration Area ("EDA") Habitability Decision," finding certain specific areas of the EDA habitable for residential use, with certain other areas deemed suitable only for commercial and/or light industrial use.  Since that time, largely as a result of the efforts of the Love Canal Area

---

[5]As alleged in the First Amended Complaint, OCC agreed to pay a total of $227 million to cover the governments' response costs.  Item 1-1, ¶ 101.  OCC also settled the several lawsuits filed in state court by individual Love Canal homeowners.  *See id.* at ¶¶ 99-100.

[6]Responsibility for OM&M of the site was transferred from NYSDEC to OCC in April 1995.  Since July 1, 1998, OCC's responsibilities have been carried out by defendant GSH which, in coordination with its contractor, defendant CRA, manages the day-to-day OM&M activities at the site.  *See* Item 116-5 (Five-Year Report), p. 19.

Revitalization Agency ("LCARA"), more than 260 formerly abandoned homes in the EDA have been rehabilitated and sold to new residents, repopulating the neighborhood under the new name "Black Creek Village." Item 1-1, ¶¶ 104-110; *see also* www.health.ny.gov/environmental/investigations/love_canal/lcdec88.

As related above, three of the families currently residing in the Black Creek Village area brought the current action in state court alleging personal injury, property damage, and loss of companionship caused by exposure to "certain 'signature' Love Canal contaminants" (Item 1-1, ¶ 124) released onto their property and into their homes as a result of, *inter alia*, defendants' negligent performance of the remedial program and OM&M obligations at the Landfill, as well as the sewer line remediation work in the vicinity of the EDA in January 2011. Plaintiffs seek money damages (including punitive damages) and "equitable relief in the form of complete remediation of the contamination within, around, and under their properties as well as the establishment of a medical monitoring trust fund on [their] behalf …" (*id.* at ¶ 6), relying entirely on state and common law theories of negligence, abnormally dangerous activities, private nuisance, and trespass.

Following defendants' removal of the case to this court on the basis of original federal jurisdiction under CERCLA, plaintiffs moved to remand the case back to state court on the ground that this court lacks subject matter jurisdiction over the claims alleged in the "well-pleaded" First Amended Complaint. Item 61. For the reasons that follow, the remand motion is granted.

## DISCUSSION

**I.      Removal and Remand**

The federal removal statute allows a defendant to remove an action that was originally filed in state court to federal district court "only if the case originally could have been filed in federal court." *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998) (citing 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."); *see* 28 U.S.C. § 1331 (district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  The statute provides further that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to the state court.  28 U.S.C. § 1447(c).  The remand order "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.*

When the plaintiff challenges the court's subject matter jurisdiction on a motion to remand, the defendant "bears the burden of showing that federal jurisdiction is proper." *Montefiore Medical Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011); *Scipar Inc. v. Chubb Corp.*, 2010 WL 3894982, at *2 (W.D.N.Y. Sept. 30, 2010); *see also Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. … It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting

jurisdiction.").    In deciding the remand motion, the court "must construe all disputed questions of fact and controlling substantive law in favor of the plaintiff …," *Weinrauch v. New York Life Ins. Co.*, 2013 WL 165018, at *3 (S.D.N.Y. Jan. 16, 2013), and, "out of respect for the limited jurisdiction of the federal courts and the rights of states, … must resolve any doubts against removability."  *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (internal quotation marks, alterations, and citation omitted); *D.A. Elia Const. Corp. v. Damon Morey LLP*, 2013 WL 1337194, at *9 (W.D.N.Y. Mar. 29, 2013).

## II.    The Well–Pleaded Complaint Rule

The presence or absence of federal question jurisdiction is governed by the "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a federal question is present on the face of the plaintiff's properly pleaded complaint."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936)).   "The 'well-pleaded complaint rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts."  *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987), *quoted in New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012).  Under this rule, "federal question jurisdiction exists only when the plaintiff's own cause of action is based on federal law, and only when plaintiff's well-pleaded complaint raises issues of federal law."  *Marcus*, 138 F.3d at 52 (citations omitted); *see also DeLuca v. Tonawanda Coke Corp.*, 2011 WL 3799985, at *3 (W.D.N.Y. Aug. 26, 2011).  "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  *Caterpillar*, 482 U.S. at 392; *see*

*also Marcus*, 138 F.3d at 52 ("Under the well-pleaded complaint rule, the plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available.").

As explained by the Second Circuit in *Marcus*:

> Generally, a complaint that pleads only state law causes of action may not be removed to federal court even where Congress has chosen to regulate the entire field of law in the area in question. A claim that federal law preempts all state law remedies is usually only a defense to the state law action, and a case generally may not be removed to federal court on that basis, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."

*Marcus*, 138 F.3d at 52 (quoting *Caterpillar*, 482 U.S. at 392; other citations omitted).

Thus, a well-pleaded complaint can be found to raise an issue of federal law "only when a right or immunity created by the Constitution or laws of the United States is an essential element of the cause of action. It is not enough that the complaint anticipates a potential federal defense." *Shinnecock Indian Nation*, 686 F.3d at 138 (internal quotation marks, alterations, and citations omitted). When a federal law defense is raised, "state courts, being of equal dignity with federal courts, are equally competent to address that potential defense." *Giles v. Nylcare Health Plans, Inc.*, 172 F.3d 332, 339 (5th Cir. 1999) (citing *Tafflin v. Levitt,* 493 U.S. 455, 458 (1990) ("Under this system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.")).

## III.     Exceptions

The case law has recognized certain limited exceptions to the well-pleaded complaint rule, ordinarily categorized under the doctrine of "artful-pleading." *See Veneruso v. Mount Vernon Neighborhood Health Center*, ___F. Supp. 2d ___, 2013 WL 1187445, at *3 (S.D.N.Y. Mar. 22, 2013), and cases cited therein.  The artful pleading doctrine "rests on the principle that a plaintiff may not defeat federal subject matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law."  *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271 (2d Cir. 2005) (citing *Rivet v. Regions Bank*, 522 U.S. 470, 475-76 (1998)).  The underlying rationale for this exception is that the plaintiff "may not defeat removal by omitting to plead necessary federal questions in a complaint."  *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22 (1983).

Although "[t]he precise scope of the artful-pleading doctrine is not entirely clear …," *Sullivan*, 424 F.3d at 272 n.4, the Second Circuit has essentially limited its application to two situations: (1) complete preemption–*i.e.*, "when Congress has … so completely preempted, or entirely substituted, a federal law cause of action for a state one that plaintiff cannot avoid removal by declining to plead necessary federal questions," *Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010) (internal quotation marks and citation omitted); and (2) where the plaintiff's "right to relief depends on resolution of substantial questions of federal law."  *Shinnecock Indian Nation*, 686 F.3d at 139.; *see also Veneruso*, ___F. Supp. 2d. at ___, 2013 WL 1187445, at *3 ("Put more succinctly, there are two limited

exceptions to the well-pleaded complaint rule: the complete preemption doctrine and the substantial federal question doctrine.").

## A.      Complete Preemption

The complete preemption doctrine is grounded on the notion that "Congress may so completely preempt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). However, the Supreme Court has thus far only found three statutes to have the requisite "extraordinary preemptive force" to support complete preemption: § 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185, *see Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 558-62 (1968); § 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a), *see Metropolitan Life*, 481 U.S. at 65-66; and §§ 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85- 86, *see Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7-11 (2003); *see also Sullivan*, 424 F.3d at 272.

Moreover, it is uniformly recognized that, in enacting CERCLA, Congress expressly disclaimed an intent to preempt state tort liability for damages caused by the release of hazardous substances.  Specifically, CERCLA's general "savings" clause provides:

> Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants.  The provisions of this chapter shall not be considered, interpreted, or construed in any way as reflecting a determination, in part or whole, of policy regarding the inapplicability of strict liability, or strict liability doctrines, to activities relating to hazardous substances, pollutants, or contaminants or other such activities.

42 U.S.C. § 9652(d); *see also* 42 U.S.C. § 9607(j) ("Nothing in this paragraph [pertaining to recovery for response costs or damages resulting from a federally permitted release] shall affect or modify in any way the obligations or liability of any person under any other provision of State or Federal law, including common law, for damages, injury, or loss resulting from a release of any hazardous substance or for removal or remedial action of such hazardous substance."); 42 U.S.C. § 9614(a) ("Nothing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State."); 42 U.S.C. § 9672 ("Nothing in this subchapter shall be construed to affect either the tort law or the law governing the interpretation of insurance contracts of any State.").

The courts have consistently construed these provisions as evidence of congressional intent "to preserve to victims of toxic wastes the other remedies they may have under federal or state law." *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 617 (7th Cir. 1998) (citing cases from the 5th, 6th, 9th and 10th Circuits), *cert. denied*, 525 U.S. 1104 (1999); *New York v. Ametek, Inc.*, 473 F. Supp. 2d 432, 433 (S.D.N.Y. 2007) ("It is clear from the language of the [savings clauses] that CERCLA does not expressly preempt state law."); *W.R. Grace & Co.-Conn. v. Zotos Intern., Inc.*, 2005 WL 1076117, at *11 (W.D.N.Y. May 3, 2005) (CERCLA's savings clauses "preserve a party's rights 'arising under' state law, … so long as those claims are not duplicative of or in conflict with CERCLA."), *aff'd in relevant part*, 559 F.3d 85 (2d Cir. 2009). Indeed, in the *Hooker* litigation, this court explicitly recognized that finding OCC jointly and severally liable for the response costs under CERCLA did not preempt the State from imposing additional liability

under state law "with respect to the release of hazardous substances within such State." *Hooker*, 722 F. Supp. at 964 n.1  (quoting 42 U.S.C. § 9614(a)).

Though not binding on this court, the Fifth Circuit's holding in *MSOF Corp. v. Exxon Corp.* 295 F.3d 485 (5th Cir.), *cert. denied*, 537 U.S. 1046 (2002), is noteworthy for having addressed removal and remand issues under circumstances very similar to those presented here.  In *MSOF Corp.*, the plaintiffs brought an action in Louisiana state court against the owners and operators of two hazardous waste disposal facilities which had been remediated pursuant to a consent decree entered in a prior CERCLA action brought in federal district court.  The plaintiffs claimed their land was being contaminated by toxic chemicals emanating from the disposal sites, and sought relief in the form of compensatory damages in an amount commensurate with the cost of restoring and remediating their property.  Liability was premised on common law theories of negligence, strict liability, trespass, and nuisance.  *See MSOF Corp. v. Exxon Corp.*, 934 So.2d 708, 714 (La. Ct. App. 2005) (appeal after remand).  The defendants removed the case to federal court on the basis of original federal jurisdiction under CERCLA, and the plaintiffs moved for remand.  The district court denied the remand motion, reasoning that "the plaintiffs' claims really arose under CERCLA … because of the potential for interference with the court's earlier consent decree," *MSOF Corp.*, 295 F.3d at 489, and subsequently granted the defendants' motion for summary judgment dismissing the action.

The Fifth Circuit reversed, vacated the judgment of dismissal, and remanded the case to state court, finding no basis for the district court's exercise of subject matter jurisdiction.  The circuit court rejected the defendants' argument that the relief sought by

the plaintiffs necessarily required a construction of the obligations imposed by the consent decree entered in the prior CERCLA action.  Instead, the court found that Louisiana law "also provides a cause of action under which these plaintiffs can attempt to prove that these defendants tortiously caused damage to the plaintiffs' land and can demand the very relief they seek." *MSOF Corp.*, 295 F.3d at 490.  According to the Fifth Circuit:

> This court and other courts have construed the CERCLA saving clauses in accordance with their plain meanings and have held that they preserve parties' rights arising under state law.  CERCLA does not completely preempt the plaintiffs' claims under Louisiana state law.  Therefore, the "artful pleading" doctrine is inapplicable, and the plaintiffs are entitled to rely exclusively on state law causes of action.  There is no federal question jurisdiction arising from preemption or application of the artful pleading doctrine.

*Id.* at 491.

Similarly, in this case plaintiffs seek relief only under common law theories of negligence, abnormally dangerous activities, private nuisance, and trespass–theories which have long been recognized by the New York courts as a basis for recovery from parties found to be responsible for personal injury and property damage occurring as a result of the release of toxic chemical wastes or other hazardous substances into the environment.  *See, e.g., Copart Indus. v. Consolidated Edison Co. of N.Y.*, 41 N.Y.2d 564 (1977) (discussing interplay between causes of action for nuisance and negligence as basis for auto painter's recovery of lost profits caused by noxious emissions from neighbor's smokestacks); *Murphy v. Both*, 922 N.Y.S.2d 483, 485 (App. Div., 2d Dep't, 2011) (action for damages resulting from groundwater pollution caused by landowner's negligence in failing to remove underground fuel storage tank; dismissing nuisance claim as duplicative of negligence cause of action); *Nalley v. General Elec. Co.*, 630 N.Y.S.2d

452 (Sup. Ct. 1995) (action brought by owners of land located near inactive hazardous waste disposal site, remediated by defendants pursuant to consent order with DEC, for damages based on negligence, nuisance, and trespass).  Plaintiffs do not cite the CERCLA statute, nor do they seek reimbursement of response costs or any other form of the relief available under its provisions, and the well-pleaded First Amended Complaint raises no other issues of federal law.  Although plaintiffs make reference to the prior *Hooker* litigation, there is no specific request for enforcement, modification, or alteration of the requirements of the consent decrees, judgments, orders, or any other judicial or administrative findings made with respect to the issues presented in that case.

Defendants' primary contention in opposition to remand is that the First Amended Complaint necessarily raises a controversy under federal law because, by seeking an abatement order as a remedy for private nuisance and trespass, plaintiffs have challenged the effectiveness of the existing Landfill remedy developed under the requirements of CERCLA and implemented in compliance with the consent decrees and judgments entered in the *Hooker* case.  However, defendants offer no explanation as to how "abatement" of any contamination now present in the Love Canal environment would require modification of the existing remedy in a way that is somehow inconsistent with any particular federal obligations or requirements.  In any event, as discussed, CERCLA does not completely preempt plaintiffs' nuisance or trespass claims, or otherwise foreclose plaintiffs from relying on common law theories for the relief they seek.  In the absence of complete preemption, defendants' contentions regarding the preclusive effect of the consent decrees, the requirements of the existing remedial program, or the liabilities and obligations under CERCLA can only be regarded as federal defenses to properly raised state law claims,

which "state courts, being of equal dignity with federal courts, are equally competent" to adjudicate. *Giles*,172 F.3d at 339; *see also In re Pfohl Bros. Landfill Litigation*, 67 F. Supp. 2d 177, 184-85 (W.D.N.Y. 1999) (CERCLA neither preempts state law toxic tort claims nor creates a federal cause of action for personal injury or property damage caused by release of hazardous substances; defendants' interjection of issues relating to applicability of CERCLA found insufficient to confer federal question jurisdiction) (citing *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("A defense that raises a federal question is inadequate to confer federal jurisdiction.")).

### B.   Substantial Federal Question

In *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), the Supreme Court established the following three-part test for applying the substantial federal question exception to the well-pleaded complaint rule: (i) the state-law claim must necessarily raise a federal issue; (ii) that federal issue must be actually disputed and substantial; and (iii) a federal forum must be able to entertain the state-law claim without disturbing any congressionally approved balance of federal and state judicial responsibilities. *Id.* at 314; *Veneruso*, ___F. Supp. 2d. at ___, 2013 WL 1187445, at *6. Defendants contend that application of the *Grable* test here reveals that removal was proper because the state law causes of action set forth in the First Amended Complaint necessarily depend on resolution of substantial questions of federal law–namely, the liabilities and obligations imposed by CERCLA, as incorporated into the consent decrees and other judicial and administrative orders and rulings controlling the Landfill remedy.

As discussed above, however, plaintiffs' right to relief in this action is not predicated on CERCLA or any other federal law. Rather, the propriety of the relief sought must be determined according to common law tort principles of duty, breach, causation, and damages, as applied by the courts of New York State. While defendants argue that the state law causes of action necessarily implicate CERCLA because they challenge the operation, maintenance, monitoring, and effectiveness of the remedy, this argument can only be countenanced as a defense to plaintiffs' claims for damages based on injuries caused by releases of toxic chemicals from the Landfill. As stated by the Supreme Court in *Caterpillar Inc. v. Williams*, however:

> [T]he presence of a federal question … in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule–that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.

482 U.S. at 398-99.

This principle was recently and amply illustrated in this district, under analogous circumstances, in the *DeLuca v. Tonawanda Coke Corp*. case. The plaintiffs in that case brought a class action in state court, based entirely on state and common law causes of action, seeking damages from exposure to toxic substances released from the defendants' foundry coke manufacturing facility. The defendants removed the case to federal court on the basis of original federal jurisdiction, contending that the complaint raised substantial issues of federal law because it referenced determinations by the USEPA that the facility was in violation of several federal environmental protection statutes (including CERCLA), and further, that federal administrative and criminal proceedings had been instituted

against the facility's environmental control manager. The court granted the plaintiffs'

motion to remand, finding that the allegations in the complaint regarding the federal

statutory violations "fail[ed] the test for establishing 'arising under' jurisdiction set forth in

*Grable*." *DeLuca*, 2011 WL 3799985, at *5.

> These allegations do not create a federal law question necessary to the
> determination of whether Defendants committed common-law torts against
> Plaintiffs. As noted, none of the causes of action asserted by Plaintiffs
> necessarily depends on a determination that Defendants violated federal law.
> The references to federal law violations and proceedings are merely
> contextual allegations and cannot transform this state case into one
> appropriate for federal jurisdiction.

*Id.* at *6.

Similarly, in this case, none of the common law bases for liability asserted in the

First Amended Complaint necessarily raise an issue of federal law that is actually disputed

and substantial. As in *DeLuca*, a jury could find that defendants were negligent in the

performance of their operation, maintenance, and monitoring obligations with respect to

the Landfill remedy, or that this negligence resulted in a nuisance or trespass requiring

abatement, without determining whether defendants violated CERCLA. Plaintiffs'

references in the pleadings to the *Hooker* litigation are "merely contextual," providing no

basis for federal question jurisdiction.

Based on this analysis, the court finds that plaintiffs' well-pleaded complaint raises

issues fully determinable under the principles of state law, and defendants have failed to

convince the court that plaintiffs have attempted to defeat federal subject matter jurisdiction

by artfully pleading the First Amended Complaint so as to omit necessary issues of federal

law. As discussed, CERCLA does not completely preempt state tort liability for damages

caused by the release of hazardous substances, and the causes of action set forth in the

pleadings do not necessarily depend on resolution of substantial questions regarding response cost liabilities or other obligations imposed by CERCLA.

**IV. 42 U.S.C. § 9613(b)**

The same analysis holds true with respect to defendants' contention that removal was proper because, under 42 U.S.C. § 9613(b), federal courts have "exclusive original jurisdiction over all controversies arising under" CERCLA. According to defendants, plaintiffs' claims "arise under" CERCLA, and are subject to the exclusive jurisdiction provision in § 9613(b), because they challenge the effectiveness of the CERCLA remedy at the Landfill. *See ARCO Envtl. Remediation, LLC v. Dep't of Health and Envtl. Quality of Montana*, 213 F.3d 1108, 1115 (9th Cir. 2000) (jurisdiction under § 9613(b) covers any "challenge" to a CERCLA cleanup; claim constitutes a CERCLA challenge "if it is related to the goals of the cleanup"); *see also Coffey v. Freeport-McMoRan Copper & Gold Inc.*, 623 F. Supp. 2d 1257, 1271 (W.D. Okla.) (claim challenges CERCLA remedial action if the relief requested will interfere with the implementation of a CERCLA remedy), *aff'd*, 581 F.3d 1240 (10th Cir. 2009); *North Penn Water Auth. v. Bae Sys.*, 2005 WL 1279091, at *9 (E.D. Pa. May 25, 2005) (claim "constitute[s] a direct challenge to CERCLA" because plaintiff "seeks to dictate specific remedial actions … which conflict with the EPA's remediation plan").

As already discussed, the claims set forth in the First Amended Complaint do not expressly challenge the effectiveness of the Landfill remedy, request modification of any of its carefully crafted and fully implemented remedial components, or seek any specific action that might conflict with the remediation plan. Rather, plaintiffs seek only to be made

whole for any harm proximately caused by defendants' conduct, whether in performance of operation, maintenance, and monitoring obligations with respect to the remedy, or during the Sewer Remediation Program. *Cf. Southeast Texas Environmental, L.L.C. v. BP Amoco Chemical Co.*, 329 F. Supp. 2d 853, 871 (S.D.Tex. 2004) ("Because Plaintiffs' claims bear only on the liability of individual defendants and not on the cleanup itself, the Court concludes that Plaintiffs have not challenged a CERCLA cleanup.").  As recognized by the Ninth Circuit in *ARCO*, Congress did not intend CERCLA's exclusive jurisdiction provision "to serve as a shield against litigation that is unrelated to disputes over environmental standards."  *ARCO*, 213 F.3d at 1115.

Accordingly, the court concludes that the claims set forth in the First Amended Complaint in this action do not present a controversy "arising under" CERCLA within the meaning of § 9613(b), and those claims are not within the exclusive jurisdiction of the federal courts.

Based on the foregoing, and adhering to the standards for construing removal jurisdiction narrowly with all doubts resolved against removal, *see Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002), the court finds that defendants have failed to meet their burden of establishing that the "well-pleaded" First Amended Complaint raises any necessary, substantial issue of federal law.  Accordingly, this court is without subject matter jurisdiction to hear the case, and plaintiffs' motion to remand the case back to New York state court must be granted.

## V.      Attorneys' Fees

Plaintiffs have requested an award of attorneys' fees pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The court may award attorneys' fees, however, only "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

As evidenced by the discussion above, defendants' arguments for removal, while ultimately unpersuasive, have some plausible support in the law, and there is nothing in the record before the court to suggest that the matter was removed for the purpose of prolonging the litigation, imposing costs on the opposing party, or for any other reason than a good faith attempt to secure the proper forum. *Id.* at 140; *see Elmira Teachers' Ass'n, et al. v. Elmira City Sch. Dist.*, 2006 WL 240552, at *7 (W.D.N.Y. Jan. 27, 2006) ("[T]he absence of bad faith, as well as the existence of a colorable question as to whether removal is proper, weighs against the award of costs and fees.").

Accordingly plaintiffs' request for attorneys' fees is denied.

## VI.      Defendants' Motions to Dismiss

Also pending on this court's docket are several of the defendants' motions to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Items 19 (Edward Roberts);[7] 67 & 74 (Occidental

---

[7]As noted above, plaintiffs have voluntarily withdrawn their claims against Mr. Roberts. *See* n.3, *infra.* However, his motion to dismiss remains on the court's docket as Item 19.

Defendants); 71 (City); 78 (Op-Tech); 82 (Sevenson); 85 (Kandey); 102 (Gross); 104 (Roy's Plumbing); 106 (Scott Lawn); and 129 (CECOS). Because the court has determined that it is without subject matter jurisdiction over the claims in this case, it cannot reach the merits of defendants' motions to dismiss. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)).

Accordingly, defendants' motions to dismiss are denied without prejudice to renew upon remand.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion (Item 61) to remand this case to New York State Supreme Court, County of Niagara, is granted. Plaintiffs' request for attorneys' fees incurred as a result of the removal is denied.

Defendants' motions to dismiss (Items 19, 67, 71, 74, 78, 82, 85, 102, 104, 106, and 129) are denied without prejudice.

The Clerk of the Court is directed to take whatever action is necessary to transfer this action to New York State Supreme Court, Niagara County.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: August 21, 2013
p:\opinions\13-487.aug21.2013

-23-